UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEBRA ANN HOLT,

 Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

 Defendant.

_____/

Hon. Phillip J. Green

Case No. 1:16-cv-01096-PJG

**MEMORANDUM OPINION AND ORDER**

 Plaintiff Debra Ann Holt filed this lawsuit against defendant State Farm Mutual Automobile Insurance Company to recover Michigan no-fault personal injury protection insurance (no-fault PIP) benefits relating to injuries she sustained in a June 12, 2012, automobile accident. Her second amended complaint raises three claims: (1) breach of contract and violation of the Michigan No-Fault Automobile Insurance Act (Count I); (2) a private cause of action on behalf of Medicare for recovery of amounts Medicare paid for plaintiff's medical care and treatment (Count II); and (3) a declaratory judgment action as to whether State Farm can be held liable for no-fault PIP benefits for ongoing medical treatment (Count III). (ECF No. 25).

State Farm has moved for partial summary judgment, arguing that the undisputed material facts demonstrate that plaintiff's post May 25, 2017,[1] lumbar and cervical spine treatment is unrelated to injuries sustained in the June 12, 2012, automobile accident. (ECF No. 32). Plaintiff has responded. (ECF No. 38).

For the reasons stated herein, the motion for partial summary judgment will be granted. Count III of the second amended complaint will be dismissed.

Procedural History

Plaintiff initiated this lawsuit by filing a complaint in the Ingham County Circuit Court on April 4, 2014, seeking certain no-fault PIP benefits under the Michigan No-Fault Automobile Insurance Act, MICH. COMP. LAWS § 500.3107(1)(c). (Summons and Complaint filed herein at ECF No. 1-2). Plaintiff thereafter filed a motion to amend her complaint, seeking to add a claim under the Medicare Secondary Payer Act, 42 U.S.C. § 1395y(b)(2)(B)(ii). (Motion and First Amended Complaint filed herein at ECF No. 1-4).

On September 5, 2016, State Farm removed this matter to this Court on the basis that the Medicare Secondary Payer Act claim raised a federal question. (ECF No. 1). Plaintiff's subsequent motion to remand (ECF No. 4) was denied on November 15, 2016 (ECF No. 7). Plaintiff filed a second amended complaint on

---

[1] May 25, 2017, was arbitrarily selected by defendant as a date sufficiently removed from the accident date that there is no longer a factual dispute regarding medical causation. (ECF No. 40, PageID.838). Plaintiff acknowledges that the opinions of her own treating physicians "do not seem to provide enough support" to satisfy the causation standard for any treatment after May 25, 2017. (ECF No. 38, PageID.756).

-2-

October 11, 2017 (ECF No. 25), and State Farm answered on October 31, 2017 (ECF No. 27).

State Farm filed a motion for partial summary judgment on March 29, 2018. (ECF No. 32). Plaintiff obtained an extension of time to respond (ECF No. 35, 37), and filed her response on May 25, 2018 (ECF No. 38).

Facts

    A. Plaintiff's Preexisting Conditions

Plaintiff admits that she suffered from a number of degenerative conditions in her neck and back prior to the June 12, 2012, vehicle accident. These pre-existing conditions required extensive medical treatment, including six surgical procedures. Plaintiff also underwent various forms of pain management treatment and therapy before the accident. (*See* Pltf's Br. at 6-7, ECF No. 38, PageID.751-52; *see also* ECF No. 38-2 through 38-9; ECF No. 38-12, PageID.830-31; Vallejo Dep., 4-33, ECF No. 32-9, PageID.589-97; ECF No. 32-9, PageID.656-82).

    B. The Accident and Post-Accident Treatment

It is undisputed that, on June 12, 2012, plaintiff Debra Ann Holt was injured in a two-car accident. The vehicle she was driving was struck by another vehicle, the driver of which failed to yield the right of way. Plaintiff resided in Danvers, Illinois. State Farm insured plaintiff's vehicle, and the policy included coverage for Michigan no-fault PIP benefits.

After the accident, plaintiff was taken by ambulance to a local hospital. Plaintiff reported pain in her neck, lower back, left arm, and shoulder; she also complained of headaches. The hospital staff took X-rays of plaintiff's neck, but no medications were administered because she was already taking narcotic pain medication.[2]

Following the accident, plaintiff was treated by Dr. Jeffrey Wingate. On October 1, 2012, MRIs were taken of plaintiff's cervical and lumbar spines. (ECF No. 32-2, 32-3). The cervical spine showed some post-fusion changes with underlying degenerative disease. (ECF No. 32-3, PageID.383). It was noted that the cervical "[f]indings are stable when compared with the [May 15, 2012,] exam." (*Id.*). The lumbar spine displayed prior fusion at L-4-5, with severe stenosis of the right L-5-S1 foramen due to right disc and osteophyte complex. It was noted that plaintiff's lumbar spine was "stable in appearance." (*Id.*).

Dr. Wingate referred plaintiff to Dr. Daniel Mulconrey, who examined her on January 28, 2013. (ECF No. 32-4, PageID.385-86). Dr. Mulconrey performed a surgical multilevel spinal reconstruction and posterior osteotomy on April 9, 2013. (*Id.*). Plaintiff's condition improved initially, but her symptoms returned. (*Id.*). Some of the rods that had been placed in her lumbar spine broke, requiring surgical

---

[2] Record citations are generally missing for foundational information like the underlying insurance policy, the accident, and the medical treatment that plaintiff received immediately after the accident. The briefing reveals no dispute regarding these facts. (*See* ECF No. 32, PageID.370; ECF No. 38, PageID.749-50).

correction on February 19, 2015. (Mulconrey Dep., 25-26, ECF No. 32-8, PageID.408; ECF No. 38-12, PageID.831).

C. Medical Opinions

Dr. Mulconrey wrote a letter, dated February 20, 2014, in which he compared the results of several MRIs of plaintiff's spine, performed both before and after the June 12, 2012, accident. He offered an opinion that plaintiff had sclerosis and a flat back secondary to surgeries performed before the accident. Dr. Mulconrey noted that there were no significant anatomical changes between the pre- and post-accident MRIs, both with respect to plaintiff's lumbar spine and her cervical spine. (ECF No. 32-4, PageID.385-86). Dr. Mulconrey also stated, however, that there was a causal relationship between the accident and the April 2013 spinal surgery that he performed. (*Id.* at PageID.386). He opined that the June 12, 2012, automobile accident "aggravated the pre-existing conditions in [plaintiff's] cervical spine, significantly increasing her symptoms, including headaches, and making daily functioning much more difficult." (*Id.*).

In a letter dated May 15, 2018, Dr. Mulconrey offered an opinion as to whether the injuries plaintiff sustained in the June 12, 2012, automobile accident "remain a contributing cause" of her current medical treatment.[3] (ECF No. 38-12). The doctor reviewed plaintiff's medical history, including surgical procedures performed before and after the accident, and he noted: "To the extent [plaintiff] sustained an

---

[3] Dr. Mulconrey was deposed on August 29, 2016. He offered no opinion at that time concerning this issue. (*See* ECF No. 32-8).

-5-

aggravation of symptoms in her back and neck as a result of the subject crash, I would expect that the surgeries she underwent would have alleviated those increased symptoms." (*Id.* at PageID.831). He also noted that plaintiff suffered from a variety of serious degenerative conditions, apart from the injuries sustained in the accident, that "were likely going to worsen as she aged," and that the accident "did not cause any identifiable anatomical changes to her back and neck." (*Id.*). Dr. Mulconrey concluded:

> Therefore, it is my ultimate opinion that considering all these various factors, I cannot say, with any reasonable degree of medical certainty, that the injuries [plaintiff] sustained in the subject crash remain a contributing cause for the treatment of conditions and symptoms related to her back and neck for any time after May 25, 2017.

(*Id.*).

Dr. Matthew Colman is an orthopedic surgeon who has treated plaintiff following the June 12, 2012, accident. He submitted an affidavit in this case in response to a request that he offer an opinion as to whether the injuries plaintiff sustained in that accident remain "a significant contributing factor/cause" for medical treatment relating to her back and neck. (Colman Aff. ¶¶ 1-2, ECF No. 38-13, PageID.833). Dr. Colman reviewed plaintiff's medical history and records, and he concluded: "I can no longer say that the injuries [plaintiff] sustained in the subject crash remain a significant contributing factor/cause for the treatment of conditions and symptoms related to her back and neck." (*Id.* at ¶ 7, PageID.834). He opined: "I find [plaintiff] to be medically stationary beyond May 25, 2017. Thus any future care

beyond that date can be seen as general health maintenance only and not directly relatable to her subject crash." (*Id.*).

Dr. Steven Klafeta is a Board Certified Neurosurgeon who reviewed plaintiff's medical records on defendant's behalf. He opined "with a reasonable degree of medical certainty that any treatment of the cervical or lumbar spine after 5/25/17 would be unrelated to the motor vehicle collision on 6/12/2012." (ECF No. 39, Page ID.836). He also made the following findings:

[Plaintiff's] lumbar spine was fused in an operative procedure on 04/09/2013. Complications arising from that procedure . . . were repaired [in] a 2nd operative procedure. Those complications included a pseudoarthrosis and hardware failure. Her fusion is now complete . . . with no hardware complications. No further treatment after 05/25/2017 is required for her lumbar spine, since it is completely fused. . . . All therapies and injections for her cervical spine would be to treat the pre-existing pain symptoms that are well documented before her accident. Any whiplash symptoms from [the 6/12/12] motor vehicle collision would be resolved as of 05/25/2017. (*Id.*).

Plaintiff offers no expert medical opinion that contradicts the assertions made by doctors Klafeta, Mulconrey and Colman.

## **Summary Judgment Standard**

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *McKay v. Federspiel*, 823 F.3d 862, 866 (6th Cir. 2016). The standard for determining whether summary judgment is appropriate is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Rocheleau v. Elder Living Const., LLC*, 814 F.3d 398, 400 (6th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The Court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *France v. Lucas*, 836 F.3d 612, 624 (6th Cir. 2016).

When the party without the burden of proof seeks summary judgment, that party bears the initial burden of pointing out to the district court an absence of evidence to support the nonmoving party's case, but need not support its motion with affidavits or other materials "negating" the opponent's claim. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 788 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the movant shows that "there is an absence of evidence to support the nonmoving party's case," the nonmoving party has the burden of coming forward with evidence raising a triable issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To sustain this burden, the nonmoving party

may not rest on the mere allegations in his pleadings. *See Ellington v. City of E. Cleveland*, 689 F.3d 549, 552 (6th Cir. 2012); *see also Scadden v. Werner*, 677 F. App'x 996, 1001 (6th Cir. 2017). The motion for summary judgment forces the nonmoving party to present evidence sufficient to create a genuine issue of fact for trial. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1990); *see Newell Rubbermaid, Inc. v. Raymond Corp.*, 676 F.3d 521, 533 (6th Cir. 2012). "A mere scintilla of evidence is insufficient; 'there must be evidence on which a jury could reasonably find for the [non-movant].'" *Dominguez v. Correctional Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Anderson*, 477 U.S. at 252); *see Lossia v. Flagstar Bancorp, Inc.*, 895 F.3d 423, 428 (6th Cir. 2018).

## **Discussion**

Defendant State Farm moves for summary judgment as to Count III of the second amended complaint. Defendant contends that plaintiff has failed to offer sufficient evidence to create a triable issue of fact as to whether medical treatment after May 25, 2017, relates back to injuries arising out of the June 12, 2012, automobile accident. (ECF No. 32, PageID.376-77).

Under Michigan law, no-fault PIP benefits are limited to "[a]llowable expenses consisting of all reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation." MICH. COMP. LAWS § 500.3017(1)(a). In order to establish an "allowable expense," three requirements must be met: " '1) the charge must be reasonable, 2) the expense must be *reasonably necessary*, and 3) the expense must be

incurred.'" *Nasser v. Auto Club Ins. Ass'n*, 435 Mich. 33, 50 (1990) (quoting *Manley v. Detroit Auto. Inter-Ins. Exch.*, 425 Mich. 140, 169 (1986) (Boyle, J., concurring in part)) (emphasis supplied). Plaintiff bears the burden of establishing that an expense is reasonably necessary. *See Nasser*, 435 Mich. at 50 ("Where a plaintiff is unable to show that a particular, reasonable expense has been incurred for a reasonably necessary product and service, there can be no finding of a breach of the insurer's duty to pay that expense, and thus no finding of liability with regard to that expense.").

Defendant offers the expert medical opinion of Dr. Steven Klafeta, a Board Certified Neurosurgeon, who opines, "with a reasonable degree of certainty that any treatment of [plaintiff's] cervical or lumbar spine after [May 25, 2017] would be unrelated to the motor vehicle collision on [June 12, 2012]." (ECF No. 39, PageID.836). None of plaintiff's treating physicians offer an opinion connecting any of her accident-related injuries to her need for ongoing medical treatment. To the contrary, two of plaintiff's treating physicians – doctors Mulconrey and Colman – have each explicitly stated that they are unable to opine to any reasonable medical certainty that plaintiff's need for medical treatment after May 25, 2017, is related to injuries sustained in the June 12, 2012, accident. (*See* Mulconrey Letter, ECF No. 38-12, PageID.831; Colman Aff. ¶ 7, ECF No. 38-13, PageID.833).

Defendant has shown an absence of evidence to support a declaratory judgment that it can be held liable for medical treatment beyond May 25, 2017. Plaintiff has failed to meet her burden of offering evidence sufficient to raise a triable

issue of fact on this issue.  *See Celotex* 477 U.S. at 323.  Moreover, having carefully reviewed the record, the Court can find nothing in the record to suggest a genuine issue of material fact as to whether any of plaintiff's medical treatment beyond May 25, 2017, relates back to injuries she sustained in the June 12, 2012, automobile accident.  Accordingly, defendant is entitled to summary judgment on Count III of plaintiff's second amended complaint.

## ORDER

For the reasons stated herein, defendant's motion for partial summary judgment (ECF No. 32) is **GRANTED**.

**IT IS SO ORDERED**.

Date:  February 6, 2019  /s/Phillip J. Green
PHILLIP J. GREEN
United States Magistrate Judge